# IN THE COURT OF APPEALS OF IOWA

No. 25-1385
Filed January 28, 2026

**In the Interest of E.S., Minor Child,**

**B.S., Mother,**
Appellant.

Appeal from the Iowa District Court for Jones County,
The Honorable Joan M. Black, Judge.

**APPEAL DISMISSED**

B.S., Anamosa, self-represented appellant.

Brenna Bird, Attorney General, and Mackenzie L. Moran, Assistant
Attorney General, attorneys for appellee State.

Robert Davison, Cedar Rapids, guardian ad litem for minor child.

Joseph Pavelich, Iowa City, attorney for minor child.

Considered without oral argument
by Tabor, C.J., and Greer and Schumacher, JJ.
Opinion by Greer, J.

1

**GREER, Judge.**

A mother appeals from a permanency order following a joint permanency and termination hearing. She does not appeal from the portion of the order that dismissed the termination-of-parental-rights petition, although the juvenile court found that a ground for the termination of B.S.'s rights existed.[1] Instead, the mother appeals the determination that the best interests of the child would be served by changing the permanency goal from reunification with the mother to placing the child in the sole custody of his father pursuant to Iowa Code section 232.104(2)(d)(1).[2]

Before we reach the merits of the mother's appeal, we must decide if we have jurisdiction to hear the appeal. The State did not file a responsive brief but instead filed a statement that it disagreed with the juvenile court's decision to not terminate the mother's parental rights and instead transfer sole custody to the father. Further, the State noted that it "continues to maintain the position that [the] delayed appeal should not be granted." After reviewing the filings in this appeal, we conclude that based upon the mother's failure to timely appeal, we do not have jurisdiction to hear this matter. Thus, we are required to dismiss the appeal.

The history of the proceedings leading up to this appeal is not quite straightforward, but that does not impact our final analysis. A joint permanency–termination trial involving the termination of the mother's

---

[1] The juvenile court found the grounds under Iowa Code section 232.116(1)(f) (2025) supported termination of the mother's rights to E.S.

[2] Once a permanency hearing is held, as an option for the juvenile court, it can "[t]ransfer sole custody of the child from one parent to another parent." Iowa Code § 232.104(2)(d)(1).

parental rights to E.S. took place over three days in May and June 2025. At the trial, the mother represented herself, with standby counsel.

The juvenile court entered its order on August 15. In the order, the juvenile court found that the State met its burden to show clear and convincing evidence supporting termination of the mother's parental rights under section 232.116(1)(f). But, the court concluded that the child's best interests would not be served by termination. So, instead of terminating the mother's parental rights, the juvenile court dismissed the termination petition and changed the permanency goal. It ordered the child placed in the sole custody of the father, with the court retaining jurisdiction over the matter under section 232.104(2)(d)(1).

On July 30, before the juvenile court made its ruling, in appellate case number 25-1247, the mother filed an appeal from a July 15 order that addressed and denied the mother's motion for reasonable efforts because it was considered during the trial and the juvenile court "has yet to rule on the termination of parental rights/reasonable efforts matters." On August 1, noting that the challenged order was not a final order for purposes of appeal, our supreme court treated the mother's filing as an application for interlocutory appeal and denied it.[3]

On August 27, although the juvenile court had filed the ruling on the permanency–termination matter on August 15, the juvenile court vacated its ruling, stating:

> As the Court was reviewing the motion and the record of the case, the Court noted that [the mother] had filed a notice of appeal regarding a July 15, 2025, order entered by the Court. The Court of Appeals entered an order on August 1, 2025, dismissing [the mother]'s appeal.

---

[3] Procedendo from this first appeal issued on August 20, 2025.

The Court filed the Ruling Re: Termination of Parental Rights order on August 15, 2025. The Procedendo order was not filed until August 20, 2025. Although [the mother] did not raise the issue in her motion to vacate, the Court believes, in an abundance of caution, that the Ruling Re: Termination of Parental Rights order should be vacated as on August 15, 2025, the Court did not have proper jurisdiction to enter such an order.

Therefore, solely on the basis of the timing of the filing of the order, the Ruling Re: Termination of Parental Rights order filed on August 15, 2025, is hereby VACATED.

The same day, following vacation of the August 15 order, the juvenile court then filed an identical ruling to the one filed on August 15 regarding the termination of parental rights. But, on August 26, the day before this second final order was filed, the mother filed a notice of appeal, which now referenced the August 15 "final Permanency Order."

To clear the confusion, on September 10, our supreme court issued an order confirming that it was unnecessary for the juvenile court to vacate its original August 15 order. The supreme court also stated it would treat the mother's August 26 notice of appeal as timely, but noted "for the mother's appeal to proceed, a notice of appeal *must be filed within 15 days of the juvenile court's August 27, 2025 order* in the termination-of-parental-rights case. Iowa R. App. P. 6.101(1)(a)." (Emphasis added.)

On September 11, the mother filed another notice of appeal. By order on September 15, the supreme court addressed this notice by ordering that: "[t]he mother's deadline to *file her petition on appeal shall run from the filing date of the September 11, 2025* notice of appeal pursuant to Iowa Rule of Appellate Procedure 6.201(1)(b), which provides the petition on appeal shall be filed within 15 days of the notice of appeal." (Emphasis added.) The mother filed a petition on appeal on September 27 and then amended it on October 1.

The supreme court again weighed in and, on October 2, noted that the petition on appeal was filed one day past the deadline established in the September 15 order. Because Iowa Rule of Appellate Procedure 6.201(3) requires the supreme court clerk to dismiss the appeal,[4] the mother was ordered to file a statement addressing why the appeal should not be dismissed. This order also struck both the mother's petition on appeal and amended petition for failing to comply with the appellate rules and noted that "only the record on appeal will be considered by the court." The mother was directed to file an amended petition, complying with the appellate rules, within seven days of the order.

On October 3, both the mother and the State filed responses to the delayed appeal issue. On October 4, the mother filed an amended petition on appeal. Our supreme court directed that the delayed appeal issue be submitted with the appeal.

In the mother's statement related to the untimely filing she contended that (1) she experienced a technical issue in converting the petition on appeal to a PDF format; (2) her standby counsel verified an incorrect date for filing and the mother in good faith relied upon that error; (3) there was a clear intent to appeal; (4) the merits of the appeal "have far-reaching implications for future cases and the administration of justice in Iowa's juvenile system"; and (5) case precedent supports the appeal where the failure to perfect the appeal was outside the control of the parent and the delay is negligible.

---

[4] Pursuant to Iowa Rule of Appellate Procedure 6.201(3), "[i]f the petition on appeal is not filed with the clerk of the supreme court within 15 days after the filing of a notice of appeal . . . the supreme court shall dismiss the appeal, and the clerk will immediately issue procedendo."

The State asserted that the mother failed to demonstrate her entitlement to a delayed appeal, citing *In re W.T.*, 967 N.W.2d 315, 318–22 (Iowa 2021), which confirms that to avoid dismissal involving a delayed appeal, the appellant must show: (1) she clearly intended to appeal, (2) her failure to timely perfect the appeal was outside of her control, and (3) the delay was no more than negligible. Conceding the mother showed she clearly intended to appeal, the State asserted that, as a self-represented party, the mother failed to show that converting the filings to a PDF fell outside of her control, thus she failed to establish the second requirement because her failure to timely appeal was directly in her control. The State also maintained that the delay that resulted from all of the mother's filings was more extensive than one day and should be part of the consideration under the third factor.

In considering the three factors related to our delayed-appeal analysis, we look at the mother's performance under the lens of the duties of legal counsel as she chose to be self-represented in this case. As we have previously stated regarding self-represented litigants,

> [w]e do not utilize a deferential standard when persons choose to represent themselves. The law does not judge by two standards, one for lawyers and another for lay persons. Rather, all are expected to act with equal competence. If lay persons choose to proceed pro se, they do so at their own risk.

*Kubik v. Burk*, 540 N.W.2d 60, 63 (Iowa Ct. App. 1995) (internal citations omitted).

Thus, "our delayed appeal analysis should not turn on the *strength or weakness of counsel's explanation for missing the appeal deadline*." *W.T.*, 967 N.W.2d at 320–21 (emphasis added). And we are to "strictly circumscribe[]" the delayed appeal standard. *In re A.B.*, 957 N.W.2d 280, 292 (Iowa 2021). To that end, when the cause for the delay and untimeliness is the parent's fault, we have dismissed the appeal. *See In re K.W.*, No. 24-1607, 2025 WL 271370, at *3 (Iowa Ct. App. Jan. 23, 2025) (distinguishing cases where

6

delayed appeals are caused by counsel and applying the directive that an appeal would be denied if the failure to timely appeal resulted from the mother's actions).

Unlike the cases where legal counsel's actions impede the timely appeal, here the failure to timely appeal was in the mother's control and thus, we cannot grant a delayed appeal. *See A.B.*, 957 N.W.2d at 293 (analyzing whether the two-day delay in filing the petition on appeal caused by the father's attorney would require dismissal of the appeal).

**APPEAL DISMISSED.**